**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SAMANTHA L. CARSTARPHEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 08-0511-WS-M** |
| | ) | |
| **DEUTSCHE BANK NATIONAL TRUST** | ) | |
| **COMPANY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion to Remand (doc. 17) and plaintiff's Motion to Strike Supplemental Statement of Basis for Federal Jurisdiction (doc. 30). The motions are ripe for disposition.

**I.    Background.**

On or about July 14, 2008, plaintiff, Samantha Carstarphen, filed suit in the Circuit Court of Clarke County, Alabama, against Deutsche Bank National Trust Company and Morgan Stanley Mortgage ABS Capital 1 Inc. Trust 2004-NC6 (collectively, "defendants").  The Complaint alleged that defendant Deutsche Bank was foreclosing on certain real property owned by Carstarphen, that Deutsche Bank lacked standing to do so, that there had been no default on the underlying mortgage obligation, that Deutsche Bank's acceleration of her loan was improper, and the like.  In light of these and other allegations (certain of which were framed in the Complaint as "Affirmative Defenses to the Underlying Foreclosure Action"), Carstarphen asserted exclusively state-law causes of action against defendants for negligence (based on their alleged failure properly to credit plaintiff's account or to distribute plaintiff's payments, application of improper charges to that account, and servicing of plaintiff's loan in an unreasonable manner), wantonness (based on defendants' alleged creation of a false delinquency on plaintiff's loan and false declaration of default), unjust enrichment (based on the theory that defendants were unjustly enriched by Carstarphen's payment of mortgage charges that were illegal, unauthorized and improper), and wrongful foreclosure (predicated on allegations that

defendants' "initiation of the foreclosure proceeding ... was either negligent, wanton or intentional, depending on proof adduced at trial" (Complaint, ¶ 38)).[1]  The *ad damnum* clause of the Complaint does not delineate specific monetary damages, but it does request relief in the form of actual damages (including compensation for both emotional and financial injuries), punitive damages, injunction of the foreclosure sale, and such other and further relief as is deemed proper.  (Complaint, at 12-13.)

On September 3, 2008, defendants filed a Notice of Removal (doc. 1) removing this action to this District Court pursuant to 28 U.S.C. §§ 1441 and 1446.  Defendants predicated federal jurisdiction on diversity pursuant to 28 U.S.C. § 1332.  As to the citizenship element, defendants alleged that complete diversity exists because Carstarphen is an Alabama citizen, while Deutsche Bank is New York corporation with its principal place of business in California and Morgan Stanley is a Delaware corporation with its principal place of business in New York.  As to the amount in controversy requirement, defendants presented the Affidavit of Thomas E. Reardon, reflecting that the principal amount of the challenged loan is $63,750, the principal balance at the time of foreclosure is $62,719.27, the appraised value of the property being foreclosed upon was $86,000 as of March 2004, and Carstarphen had made payments of $16,111.66 on the loan as of the time of removal.  (Doc. 1, Exh. B.)  Based on these figures (none of which Carstarphen has challenged or disputed in these proceedings), coupled with Carstarphen's demands for damages for mental anguish, emotional injuries, and punitive damages, defendants maintained that the $75,000 amount in controversy threshold was satisfied.

---

[1]     The Complaint also asserted a fifth cause of action, in the form of a petition for *ex parte* temporary restraining order to bar defendants from moving forward with the foreclosure sale on Carstarphen's home.  (Complaint, at ¶¶ 40-53.)  The parties apparently agree that such an *ex parte* temporary restraining order was entered by the Circuit Court of Clarke County on or about August 1, 2008, prior to removal; however, neither side has filed a copy of any such order in federal court post-removal, in derogation of proper procedure.  *See* 28 U.S.C. § 1446(a) (requiring removing defendant to file in federal court "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action").  Any temporary restraining order entered by the state court would have long since expired by operation of Rule 65(b), Ala.R.Civ.P., unless defendants consented to its extension.  The Court is unaware of whether any such extension was made.  In any event, no party has actively pursued preliminary or emergency injunctive relief from this Court in the more than seven months that this action has been pending here.

II.     **Analysis of Motion to Remand.**

In her Motion to Remand, Carstarphen asks that this action be returned to state court on the following three theories: (1) the Complaint is actually "in the nature of a counterclaim" under Alabama law, such that Deutsche Bank and Morgan Stanley should be viewed not as defendants but as plaintiffs who could not properly remove this action to federal court; (2) the *in rem* nature of these proceedings negates federal jurisdiction; and (3) the amount in controversy has not been adequately established by defendants as required by law.  Defendants contest each of these bases for remand, and insist that removal was proper and that subject matter jurisdiction properly lies in federal court.  After setting forth the governing legal standard, each of plaintiff's bases for remand will be addressed in turn.

A.     *Legal Standard.*

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, bears the burden of establishing the existence of federal jurisdiction.  *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008) ("A removing defendant bears the burden of proving proper federal jurisdiction.") (citation omitted); *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted).  Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes are construed narrowly, with all doubts resolved in favor of remand.  *See Adventure Outdoors*, 552 F.3d at 1294 ("Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court."); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).  "The existence of federal jurisdiction is tested at the time of removal." *Adventure Outdoors*, 552 F.3d at 1295.

There being no federal question presented in the Complaint, defendants removed this action based solely on diversity of citizenship.  Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  *See Darden v. Ford Consumer Finance Co.*, 200 F.3d 753, 755 (11th Cir. 2000) (to qualify for diversity

jurisdiction, complaint must establish "complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000"); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).  "In light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated to strictly construe the statutory grant of diversity jurisdiction ... [and] to scrupulously confine their own jurisdiction to the precise limits which the statute has defined."  *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted).

> **B.**      ***Whether the Complaint is in the Nature of a Counterclaim.***

Carstarphen's first ground for her Motion to Remand is an oft-repeated mantra that her Complaint is actually "in the nature of a counterclaim."  (Doc. 17, at 4, 7, 9, 12, 14, 15.)  As the Court understands it, plaintiff's position is that Deutsche Bank's and Morgan Stanley's initiation of non-judicial foreclosure proceedings effectively renders them the plaintiffs, and Carstarphen the defendant, in this action, with Carstarphen's claims actually being in defense of the non-judicial foreclosure action.  In support of this notion, Carstarphen cites Alabama authority for the proposition that a mortgagor may petition a court in equity to stop an improper foreclosure sale, and also cites the language of the mortgage document itself, which identified Carstarphen's right to bring a court action to assert defenses to foreclosure, such as the non-existence of a default.[2] Apparently, Carstarphen's reasoning is that her Complaint is merely a defensive action to prevent the real aggressors (Deutsche Bank and Morgan Stanley) from consummating non-judicial forfeiture proceedings they had commenced previously,[3] thereby equating the Complaint to a counterclaim.  Although her rationale is ill-explained, ill-supported, and difficult to follow, Carstarphen ascribes tremendous significance to this "nature of a counterclaim" label because

---

[2]      Plaintiff states that a copy of the mortgage is attached to her Motion to Remand as Exhibit A; however, no exhibits of any kind are appended to that filing.  The Court will assume, without deciding, that Carstarphen is correct that paragraph 22 of the mortgage references her right to commence judicial proceedings to assert the absence of a default and other defenses to the contemplated foreclosure sale.

[3]      As Carstarphen puts it, "[i]n effect, the initiation of a non-judicial foreclosure is an *in rem* action at law to collect a debt" (doc. 17, at 12), as to which her claims for monetary and declaratory relief are mere counterclaims.  Plaintiff cites no authority on this point.

"had These [*sic*] defendantsactually [*sic*] commenced a lawsuit in the Circuit Court of Clarke County, Alabama to recover on the subject note, then there would be no basis for the defendant's [*sic*] removal of this action."  (Doc. 17, at 4.)[4]

Notwithstanding the dearth of relevant authority identified by Carstarphen, the Court agrees with her that Alabama law permits realignment of parties in certain circumstances.  *See, e.g., Ex parte State ex rel. James*, 711 So.2d 952, 968 (Ala. 1998) (noting that "realignment of parties is permissible under the Alabama Rules of Civil Procedure").  However, the Court firmly disagrees with her that this case presents an appropriate circumstance for realignment.  Despite Carstarphen's plea that her Complaint is simply an attempt to ward off improper foreclosure by Deutsche Bank and Morgan Stanley, the Complaint is not a counterclaim.  Deutsche Bank and Morgan Stanley could have sued her for breach of the mortgage note, but they did not.  Nor were they required to do so as a prerequisite to foreclosure.  Simply stated, Deutsche Bank and Morgan Stanley never petitioned any state or federal tribunal to grant them leave to foreclose on Carstarphen's real property.  They certainly did not select a Clarke County Circuit Court forum for litigation.  By contrast, Carstarphen filed a five-pronged Complaint against Deutsche Bank and Morgan Stanley in state court, seeking not only injunction of the non-judicial foreclosure proceedings, but also an award of unspecified compensatory and punitive damages for improper charges, false declarations of default, and the like.  Viewed in this light, the Complaint cannot

---

[4]    Presumably, Carstarphen's point is that if Deutsche Bank and Morgan Stanley were properly viewed as plaintiffs, they would not have a statutory right to remove under 28 U.S.C. § 1441, which provides in part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ***by the defendant or the defendants*** ...."  28 U.S.C. § 1441(a) (emphasis added); *see also American Int'l Underwriters (Phillippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1260 (9th Cir. 1988) ("The right to remove a state court case to federal court is clearly limited to defendants."); *Mammano v. American Honda Motor Co.*, 941 F. Supp. 323, 324 (W.D.N.Y. 1996) (stating that court cannot grant plaintiff's request to remove because § 1441 "by its terms allows only named defendants to remove an action to federal court"); *Franklin v. Palughi*, 2001 WL 530434, *4 n.7 (S.D. Ala. Apr. 25, 2001) ("Only a *defendant* to a state court action can remove an action to federal district court. ... Thus, Plaintiff, who was the plaintiff in the state court action, cannot remove his state court action to this Court.").  But Deutsche Bank and Morgan Stanley are not plaintiffs.  They did not initiate litigation against Carstarphen in Clarke County Circuit Court or anywhere else.  It was Carstarphen who filed suit against them, not the other way around.

reasonably be deemed a counterclaim rebutting phantom judicial claims never asserted by Deutsche Bank and Morgan Stanley.  Likewise, Carstarphen cannot reasonably be viewed as anything other than a plaintiff.  She has identified neither authorities nor persuasive reasoning that would support a different result.  The Court therefore rejects plaintiff's contentions that (a) the Complaint actually states counterclaims rather than original claims, and (b) Deutsche Bank and Morgan Stanley are the real plaintiffs for removal purposes.[5]

That a complaint is filed as an anticipatory or pre-emptive strike does not render it a counterclaim against an imaginary, unasserted claim.  That a plaintiff believes that the other side is the aggressor and that she filed her Complaint for the sole purpose of protecting herself does not magically transform her into a defendant, or her Complaint into a counterclaim.[6] Carstarphen's arguments to the contrary are devoid of legal support or logical basis.  By the unambiguous terms of the Complaint and the state-court litigation, Carstarphen initiated this lawsuit, invoked judicial processes under the Alabama Rules of Civil Procedure, and demanded monetary and injunctive relief from Deutsche Bank and Morgan Stanley by haling them into state court to defend themselves.  These circumstances leave no doubt that Carstarphen is the plaintiff, and that Deutsche Bank and Morgan Stanley are the defendants.  In that capacity, Deutsche Bank and Morgan Stanley possessed a statutory right to remove this action to federal court pursuant to 28 U.S.C. § 1441, if this action is one over which federal district courts would have original jurisdiction.  Carstarphen's contention otherwise is meritless.

---

[5]    Although not identified by the parties, at least one other district court in Alabama has recently rejected these very same arguments by the very same counsel representing Carstarphen herein.  *See Mapp v. Deutsche Bank Nat'l Trust Co.*, 2009 WL 435069, *1 (M.D. Ala. Feb. 18, 2009) (where plaintiff filed initial pleading after bank sought non-judicial foreclosure, plaintiff's "assertion that his complaint is actually a counterclaim is unfounded").

[6]    If the law were otherwise, then plaintiffs in countless scenarios could recast themselves as defendants to bar removal.  For example, if an injured person sends a demand letter to his insurer and the insurer then files a declaratory judgment action in state court, is the insurer the defendant for removal purposes because the insured is the aggressor?  Of course not. The same goes here.  Besides, the point of not allowing plaintiffs to remove is that they selected a state forum and should therefore be bound by their decision.  Here, defendants never chose a Clarke County Circuit Court forum for this litigation.  Carstarphen did.  Defendants cannot be bound by Carstarphen's forum choice to the exclusion of their statutory right of removal.

**C.**     ***Whether the* In Rem *Aspect of this Action Precludes Federal Jurisdiction.***

Next, plaintiff argues that remand is necessary because of the *in rem* nature of this action. According to Carstarphen, when she filed her Complaint and persuaded the state court to temporarily restrain the foreclosure proceedings, "the Circuit Court of Clarke County had assumed jurisdiction and control of this *in rem* action.  As a result, the Circuit Court of Clarke County, Alabama is the only proper Court to have jurisdiction of this action."  (Doc. 17, at 4-5.) In that regard, Carstarphen points to hoary Supreme Court decisions holding that once a court obtains control of the disputed *res* in an *in rem* action, no other court can disturb that possession. *See, e.g., Mandeville v. Canterbury*, 318 U.S. 47, 48-49, 63 S.Ct. 472, 87 L.Ed. 605 (1943) (identifying long recognized rule "that if two suits pending, one in a state and the other in a federal court, are *in rem* or *quasi in rem*, so that the court or its officer must have possession or control of the property which is the subject matter of the suits in order to proceed with the cause and to grant the relief sought, the court first acquiring jurisdiction or assuming control of such property is entitled to maintain and exercise its jurisdiction to the exclusion of the other"); *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939) (recognizing "principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other").[7]  Similar rulings exist in Alabama.  *See, e.g., Ex parte Consolidated Graphite Corp.*, 129 So. 262, 265 (Ala. 1930) ("The well-established rule is that where the action is *in rem*, as in this case, that court which first acquires jurisdiction draws to itself the exclusive authority to control and dispose of the *res*.").  Nonetheless, plaintiff's position is misguided.

As a threshold matter, the Court harbors reservations as to whether plaintiff is correct in characterizing this as an *in rem* proceeding.  An action *in rem* is generally filed against property itself; however, no *res* is named as a party to this dispute.  *See, e.g., Stone v. Gulf American Fire and Cas. Co.*, 554 So.2d 346, 373 n.3 (Ala. 1989) ("As its name implies, an action *in rem* is an action or proceeding against a 'thing' or property, instead of a person; a proceeding to determine

---

[7]     As an aside, plaintiff does not advance her cause by reproducing the same discussion of the same authorities three different times in her brief.  (Doc. 17, at 5, 8-9, 12-13.) Jurisdictional analyses rarely improve in the retelling.

the state or condition of the thing itself; a judicial proceeding against the thing itself, which terminating in a valid judgment binds all the world.") (citation omitted); *Money v. State*, 717 So.2d 38, 46 n.4 (Ala.Crim.App. 1997) (action *in rem* "is against the property itself"). Carstarphen is not suing the subject property, and neither are defendants; rather, this action is about whether defendants have engaged in tortious behavior with respect to Carstarphen's mortgage and the servicing of same, whether defendants have a contractual right to foreclose on the property, and whether Carstarphen is entitled to damages and equitable relief.  It is not clear that any court would need to seize control or assume jurisdiction over Carstarphen's property to adjudicate these tort claims, the parties' respective contractual rights, and Carstarphen's equitable claims for injunctive relief to halt the foreclosure.[8]  As such, this case bears more of the hallmarks of an *in personam* action than one *in rem*.  Nor is it readily apparent that, as plaintiff insists, the state court "assumed jurisdiction and control" over the *res* by entering an *ex parte* temporary restraining order to prevent Deutsche Bank and Morgan Stanley from foreclosure of the subject property last summer.  Once again, plaintiff has cited no authority to support her characterization of this action as one *in rem*.

    Even assuming that plaintiff correctly designates this lawsuit as one *in rem*, her legal argument would nonetheless fail for three independent reasons.  First, implicit in Carstarphen's position is the idea that removal of *in rem* state court actions is impermissible, as a matter of law. But Carstarphen has cited no authority for such a remarkable premise, and nothing in the text of the removal statutes or the case law construing them supports such a distinction.  To the contrary, applicable law provides that a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), without distinguishing among *in personam*, *in rem*, or *quasi in rem* proceedings.

    Second, notwithstanding the rule (cited by Carstarphen) that a court first acquiring

---

[8]      *See generally Williams v. Williams*, 910 So.2d 1284, 1286 (Ala.Civ.App. 2005) (agreeing that "a judgment to cancel a deed operates *in personam* as to a particular defendant, and not *in rem* as to particular property"); *Kimbrough v. Hardison*, 81 So.2d 606, 608 (Ala. 1955) (finding "no question but that equity does act *in personam*"); *Knott v. Evans*, 630 S.E.2d 402, 404 (Ga. 2006) ("Injunction is distinctly an equitable remedy, and a court of equity acts *in personam*, not *in rem*.") (citation omitted).

jurisdiction draws to itself exclusive authority to control the *res* in an *in rem* action, "it is also a well-settled rule of decision in the federal courts that, when a sufficient case for removal is made in the state court, the rightful jurisdiction of that court comes to an end, and no further proceedings can properly be had there, unless in some form its jurisdiction is restored." *Consolidated Graphite*, 129 So. at 265. "When a cause has been removed to the federal court, as a matter of law of and of necessity that court acquires exclusive jurisdiction of the *res*." *Id.* Thus, Alabama courts teach that, even if Carstarphen is correct that the Circuit Court of Clarke County acquired exclusive control and jurisdiction over the real property at issue by entering a TRO, the state court ceded that authority when defendants removed this case, at which time this District Court acquired exclusive jurisdiction of the *res*. Plaintiff's position is thus irreconcilable with Alabama precedent.

Third, and perhaps most obviously, plaintiff's string of citations to *Mandeville*, *Princess Lida*, and like opinions is unavailing on its face because those cases address the problem of which court may exercise jurisdiction where distinct state and federal suits involving the same *res* are pending. Here, there are no separately filed actions implicating jurisdiction over the same real property. There is just one lawsuit, albeit one that has traveled from state to federal court via the removal process; therefore, plaintiff's authorities are inapposite. As one district court correctly observed, the *Princess Lida* line of authorities (on which Carstarphen relies) "is inapplicable where only a single case is pending and the removal statutes are used to transfer the case from state to federal court. ... This is because the removal of a case from state to federal court terminates the state court's jurisdiction, unless and until the case is remanded back to state court. ... Thus, there is no jurisdictional conflict between the state and federal courts, and the *Princess Lida* rule does not apply." *Barr v. Hagan*, 322 F. Supp.2d 1280, 1282 (M.D. Ala. 2004) (citations and internal quotation marks omitted).[9]

For all of these reasons, the Court finds no merit to plaintiff's assertion that remand of

---

[9] Once again, the Court observes that the Middle District of Alabama has recently rejected identical arguments by plaintiff's counsel in analogous circumstances. *See Mapp*, 2009 WL 435069, at *2 (deeming plaintiff's reliance on *Princess Lida* for the proposition that the state court's assumption of jurisdiction prevented removal to be misplaced, inasmuch as "there are not two overlapping proceedings, and *Princess Lida* is inapplicable").

this action is warranted by virtue of the state court's assumption of jurisdiction over the subject real property antecedent to removal.[10]

>        **D.        Whether Defendants Have Satisfied the Jurisdictional Threshold.**

In the alternative, Carstarphen maintains that remand is necessary because defendants have failed to satisfy their burden of showing that the amount in controversy exceeds $75,000, as required for jurisdiction under 28 U.S.C. § 1332.  It is well established that "in the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence."  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007).  The *Lowery* court explained that a district court must remand unless "the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them."  *Id.* at 1211.  In this regard, a district court must not "speculate in an attempt to make up for the notice's failings."  *Id.* at 1213.

Defendants counter that no speculation is needed to conclude that the amount in controversy exceeds the jurisdictional threshold.  Among the Complaint's allegations are that defendants lack standing to foreclose on Carstarphen's property and that the assignment of the mortgage to Deutsche Bank is "void, voidable, illegal, without legal effect and is otherwise invalid and unenforceable as a matter of law."  (Complaint, ¶ 24.)  The Complaint likewise alleges that, because Deutsche Bank has no standing, allowing that defendant "to foreclose could

---

>        [10]        A particularly mystifying aspect of plaintiff's Motion to Remand is its citation to *Ex parte TranSouth Financial Corp.*, 608 So.2d 385 (Ala. 1992), for the proposition that Deutsche Bank and Morgan Stanley had submitted to *in personam* jurisdiction in Clarke County by their practices of creating mortgages and foreclosing on real estate in Clarke County.  (Doc. 17, at 13-14.)  This argument conflates concepts of personal jurisdiction (which defendants have not challenged and which are not disputed herein) with statutory removal rights (which are at issue).  A defendant subject to the personal jurisdiction of a particular state court is in no way forbidden or precluded from exercising its statutory removal rights merely because that personal jurisdiction exists.  To the extent that Carstarphen maintains otherwise, the Court cannot agree.  If Carstarphen is attempting to articulate some kind of waiver argument (*i.e.*, that defendants selected a state court forum for this dispute and therefore waived their right to remove this action), the Court does not credit same because plaintiff has failed to make a reasonable showing of any waiver, much less a clear and unequivocal waiver as needed to cut off defendants' removal rights.  *See Mapp*, 2009 WL 435069, at *2 (rejecting waiver argument that defendant consented to state court jurisdiction and waived its right of removal, where plaintiff proffered no evidence of a clear or unequivocal waiver).

cause the petitioner to lose her home without being relieved of her contractual obligation on the debt." (*Id.*, ¶ 50.)  On these and other grounds, Carstarphen seeks to enjoin the foreclosure sale. Circuit law is clear that "[t]he value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted." *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002); *see also Morrison*, 228 F.3d at 1268 n.9 ("the value of an injunction for amount in controversy purposes must be measured by what the plaintiff stands to gain").  Taking the Complaint at face value, if no injunction is granted, then Carstarphen may lose her home and still remain obligated to pay her mortgage debt.[11]  By contrast, if injunctive relief is granted and the foreclosure sale is blocked, then she will keep her home even as she remains obligated to pay the mortgage debt.  To Carstarphen, the only difference between the two scenarios is whether or not she gets to retain her home, because she'll continue to owe on the mortgage either way.  From plaintiff's perspective, then, the Complaint's allegations reflect that the value of an injunction is the full value of her home.  Defendants' evidence is that plaintiff's home was appraised at $86,000 in March 2004.  (Reardon Aff. (doc. 1, at Exh. B), ¶ 5.)  Plaintiff has not challenged that figure, much less offered contrary evidence.  Of course, the actual value of Carstarphen's home could have risen or fallen in the interim; however, that $86,000 appraisal goes a long way toward satisfying defendants' burden of establishing by a preponderance of the evidence that the amount in controversy for plaintiff's injunctive relief claim exceeds $75,000.[12]

---

[11]     This is because Carstarphen claims that Deutsche Bank has no standing under the mortgage to foreclose on her house, and that she actually owes mortgage payments to someone else (either nonparty Chase Home Finance LLC or nonparty New Century Mortgage Company). By plaintiff's own reckoning, then, her mortgage obligations to Chase or New Century could survive even after Deutsche Bank foreclosed on her home.  The injunctive relief portion of the Complaint is targeted at enjoining the foreclosure sale, without affecting her mortgage obligations.

[12]     In so finding, the Court declines to adopt the valuation approach of the *Mapp* court, to-wit: "Mr. Mapp seeks to prevent the foreclosure sale on his home, and the value of that home, as demonstrated by the documents before the court, exceeds the jurisdictional minimum of $75,000.  Accordingly, the court finds that it properly exercises diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441."  *Mapp*, 2009 WL 435069, at *3. The difficulty with that rationale is that, in the typical case, foreclosure may result in the plaintiff

This conclusion is bolstered by the fact that Carstarphen is also seeking compensatory damages for financial injuries (such as assessment of illegal, unauthorized or improper charges on the mortgage, and failure properly to credit plaintiff's account or appropriately to distribute her payments) and emotional injuries (such as those caused by a "false default or a default not based in fact," and defendants' wrongful declaration that the loan is in default). (Complaint, at ¶¶ 26-39.) Furthermore, plaintiff seeks punitive damages for these alleged injuries and wrongs. Considering these categories of damages, as well as the $86,000 appraised value of the real property at issue, the Court is satisfied that defendants have shown by a preponderance of the evidence that it is readily deducible from documents presented that the requisite amount in controversy to sustain jurisdiction under 28 U.S.C. § 1332 is satisfied here.[13]

---

losing his or her home, but that adverse effect is mitigated because the plaintiff's obligation to continue paying on the mortgage is extinguished by foreclosure, such that the value of enjoining the foreclosure sale from the plaintiff's standpoint is the difference between the value of the home (an asset which the plaintiff would have lost) and the unpaid principal amount of the mortgage (a liability that would usually have been terminated by foreclosure). That difference equates to the plaintiff's equity in the home, which is all he or she stands to lose in the event of foreclosure. The case at bar is different, however, because Carstarphen is claiming that she will or may remain obligated to pay the balance of the mortgage even if the foreclosure sale moves forward. As the Complaint formulates the issues, then, Carstarphen's obligation to continue paying on the mortgage loan will or may remain constant, and the only difference is that if an injunction is granted, she will be able to keep the home while paying the mortgage, whereas if no injunctive relief is granted, she will lose the home and continue paying the mortgage. Here, then, the value of an injunction from Carstarphen's standpoint is the full value of the home, with no offset for the remaining principal balance of the mortgage, because plaintiff asserts that she will or may continue owing that money notwithstanding any foreclosure.

[13]    To be clear, the Court does not accept defendants' proposed valuations of plaintiff's compensatory damages claims for financial injuries. In particular, defendants have asserted that Carstarphen's claims of unjust enrichment, negligence and breach of fiduciary duty "place into controversy all of the funds paid to the Defendants by the Plaintiff," totaling $16,111.66. (Doc. 21, at 9.) This is an unreasonable reading of the Complaint. To be sure, the Complaint alleges that defendants imposed illegal, unauthorized, or improper charges on plaintiff; failed properly to credit her account or distribute her payments appropriately; and created a false default. Thus, Carstarphen is saying that some portion of the mortgage payments she made constituted improper charges or were not properly credited. But that is different than alleging (as defendants would have the Court find) that all of Carstarphen's mortgage payments constituted illegal, unauthorized or improper charges; that none of those payments were properly credited on her account; and the like. Therefore, the Court cannot concur with defendants that

-12-

For all of the foregoing reasons, plaintiff's Motion to Remand is not well taken to the extent it is predicated on the alleged failure to satisfy the amount in controversy element of diversity jurisdiction. The Court having concluded that plaintiff's claims set forth in the Complaint are not counterclaims, that the Clarke County Circuit Court's exercise of jurisdiction of the subject property did not pretermit defendants' statutory removal rights, that defendants have not waived any right to remove, and that the § 1332 amount in controversy has been reasonably satisfied, plaintiff's Motion to Remand is **denied**. Federal subject matter jurisdiction properly lies here. None of Carstarphen's arguments to the contrary are persuasive, whether viewed as jurisdictional or procedural in scope.[14]

---

plaintiff's first three causes of action place in controversy $16,111.66 in financial damages, inasmuch as the Complaint cannot reasonably be read as claiming more than an unspecified portion of that sum as damages. Similarly, the Court does not adopt defendants' reasoning that the Complaint "places the full balance of the loan at issue," totaling $62,719.27. (Doc. 21, at 9.) The Court does not read the Complaint as seeking to excuse Carstarphen from making further payments on her mortgage loan; indeed, none of the relief sought would terminate that loan or extinguish plaintiff's obligation to continue making payments on the mortgage to the appropriate entity or entities.

[14]     That said, the Court agrees with plaintiff that defendants' Supplemental Statement of Basis for Federal Jurisdiction (doc. 28) was improperly filed and is due to be stricken. On January 5, 2009, Magistrate Judge Milling entered an Order (doc. 18) stating that briefing on the Motion to Remand would close on February 2, 2009, after which the Motion would be taken under submission. The January 5 Order cautioned the parties that after that submission date, "no further briefs, pleadings or submissions related to the issues raised in the Motion may be filed unless the proponent obtains leave of Court for good cause shown." (Doc. 18, at 1.) Almost three months later, however, defendants filed a Supplemental Statement (doc. 28) that was effectively a second attempt to brief the Motion to Remand, with new citations to authority and exhibits, predicated on facts that by all appearances were or should have been known to defendants prior to the close of briefing. By defendants' own admission, this filing was intended to "supplement their previous Notice of Removal and Brief in Opposition to Remand." (Doc. 28, at 3.) Defendants did not obtain leave of court for this Supplemental Statement. They did not show good cause for their untimely filing which, if considered, would have thrown the briefing schedule into disarray by triggering a whole new round of briefing after the submission date of the Motion to Remand to develop issues that by all appearances could and should have been raised earlier. For these reasons, plaintiff's Motion to Strike (doc. 30) is **granted**, and defendants' Supplemental Statement of Basis for Federal Jurisdiction (doc. 28) is **stricken** for noncompliance with Judge Milling's Order dated January 5, 2009.

-13-

**III.    Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.     Plaintiff's Motion to Remand (doc. 17) is **denied**.

2.     Plaintiff's Motion to Strike (doc. 30) is **granted**, and defendants' Supplemental Statement of Basis for Federal Jurisdiction (doc. 28) is **stricken** for noncompliance with the terms of the Order entered on January 5, 2009.

3.     Still pending is defendants' Motion for Leave to Amend Answer (doc. 32).  The Court agrees with plaintiff's contention in her Opposition (doc. 33) that this Motion was not properly taken under submission because of the stay entered by Judge Milling via Order (doc. 27) dated March 23, 2009.  The Motion to Remand having now been resolved, that stay is hereby **lifted**.  As such, it is now appropriate to consider the Motion for Leave to Amend Answer.  Plaintiff is **ordered** to file a response to that motion, supported by authority as appropriate, on or before **April 27, 2009**.  If no response is filed by that date, the Court will assume that the Motion for Leave to Amend Answer is unopposed.

DONE and ORDERED this 17th day of April, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE