**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| SAMANTHA L. CARSTARPHEN, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 08-0511-WS-M** |
| | ) |
| DEUTSCHE BANK NATIONAL TRUST | ) |
| COMPANY, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on plaintiff's Motion to Reconsider or, in the Alternative, Motion to Certify Interlocutory Appeal (doc. 35). The Motion has been briefed and is ripe for disposition at this time.[1]

**I.      Background.**

In July 2008, plaintiff, Samantha Carstarphen, filed a Complaint in the Circuit Court of Clarke County, Alabama against Deutsche Bank National Trust Company and other defendants (collectively referred to herein as "Deutsche Bank"), relating to the servicing and threatened foreclosure of her mortgage by Deutsche Bank. According to the Complaint, the assignment of plaintiff's mortgage to Deutsche Bank was invalid, plaintiff was not in default of her mortgage, and Deutsche Bank had created a false delinquency by placing incorrect charges on her account while failing to credit her payments. On that basis, Carstarphen brought exclusively state-law claims against defendants for negligence, wantonness, unjust enrichment, wrongful foreclosure, and injunctive relief to prevent Deutsche Bank from foreclosing on plaintiff's home.

Defendants timely removed the case to this District Court, invoking federal diversity

---

[1]      In reviewing the parties' submissions, the Court notes that plaintiff's Reply (doc. 38) exceeds without authorization the 15-page limitation imposed by Local Rule 7.1(b). This is improper, and constitutes grounds for striking the nonconforming brief. Notwithstanding this defect, the Court in its discretion will consider the Reply as filed, with the caveat that counsel must be more attentive to applicable page limitations henceforth.

jurisdiction pursuant to 28 U.S.C. § 1332.  In her ensuing Motion to Remand, however, plaintiff

argued that her Complaint was actually in the nature of a counterclaim, thereby depriving

defendants of any right of removal; that this action is brought *in rem*, thereby negating federal

jurisdiction; and that Deutsche Bank had submitted to jurisdiction in Clarke County via its

business dealings there. (*See* doc. 17.)  The bulk of the briefing on the Motion to Remand

focused on these arguments, all of which the Court found to be meritless in an Order (doc. 34)

entered on April 17, 2009, denying such Motion.  Plaintiff has not contested or sought

reconsideration of the disposition of any of the foregoing bases for seeking remand.

As an apparent afterthought, plaintiff devoted two pages of her 16-page brief on the

Motion to Remand to a bare-bones contention that defendants had failed to make an adequate

showing of the amount in controversy required for § 1332 jurisdiction, in accordance with the

principles enunciated in *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007).  In

support of this argument, plaintiff broadly outlined the *Lowery* standard, stated the general

proposition that evidence of jury awards in other cases is insufficient, and made the blanket

statement that Deutsche Bank had "proffered no evidence that the amount in controversy is

$75,000 or more" (doc. 17, at 11), without acknowledging or rebutting specific evidence in the

Notice of Removal of the appraised value of the property, the principal amount of the loan, the

outstanding balance at the time of foreclosure, and the total payments plaintiff had made at the

time of removal.  Given plaintiff's cursory treatment of the amount-in-controversy issue in her

Motion to Remand, the lion's share of which was devoted to other objections to removal as

identified *supra*, it is unsurprising that defendants' Response (doc. 21) did not discuss amount in

controversy in detail; however, defendants did offer a facially plausible (although not

expansively developed) suggestion that the Complaint's allegations that foreclosure could cause

Carstarphen to lose her home without being relieved of her mortgage obligations to a third party

might be important to determining the amount in controversy.  (*See* doc. 21, at 9.)  Plaintiff

elected not to file a reply brief addressing Deutsche Bank's jurisdictional argument.

Faced with threadbare briefing by the parties on the jurisdictional aspect of the Motion to

Remand, the Court extrapolated from their skeletal arguments to ascertain whether the $75,000

jurisdictional amount was or was not present.[2]  Upon completing this inquiry, the Court opined

in the April 17 Order that the jurisdictional minimum was satisfied by a preponderance of the

evidence.  This conclusion was driven in large part by defendants' identification (with no

rebuttal from plaintiff) of the Complaint's allegations that if Deutsche Bank were allowed to

move forward with the foreclosure, Carstarphen might lose her home and still remain obligated

to pay her mortgage debt, because those mortgage payments are owed to some other entity.

These allegations were significant for jurisdictional purposes because of their implications for

valuing the injunctive relief sought in the Complaint, wherein plaintiff asked that Deutsche Bank

be barred from foreclosing on her house.  *See Leonard v. Enterprise Rent a Car*, 279 F.3d 967,

973 (11th Cir. 2002) ("The value of injunctive or declaratory relief for amount in controversy

purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if

the injunction were granted.").  The April 17 Order reasoned as follows:

> "Taking the Complaint at face value, if no injunction is granted, then Carstarphen
> may lose her home and still remain obligated to pay her mortgage debt.  By
> contrast, if injunctive relief is granted and the foreclosure sale is blocked, then she
> will keep her home even as she remains obligated to pay the mortgage debt.  To
> Carstarphen, the only difference between the two scenarios is whether or not she
> gets to retain her home, because she'll continue to owe on the mortgage either
> way.  From plaintiff's perspective, then, the Complaint's allegations reflect that
> the value of an injunction is the full value of her home.  Defendants' evidence is
> that plaintiff's home was appraised at $86,000 in March 2004. ... Plaintiff has not
> challenged that figure, much less offered contrary evidence."

*Carstarphen v. Deutsche Bank Nat'l Trust Co.*, 2009 WL 1035490, *6 (S.D. Ala. Apr. 17, 2009)

---

[2]       In most circumstances, federal courts are loath to articulate litigants' legal
arguments for them.  Where subject matter jurisdiction is in doubt, however, courts bear an
affirmative obligation to investigate *sua sponte*, which necessarily contemplates going beyond
the four corners of the parties' briefs to evaluate any defects in jurisdiction before moving
forward.  *See, e.g., Williams v. Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007) ("Federal courts
are obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking.")
(citation and internal quotation marks omitted); *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th
Cir. 2001) ("[B]ecause a federal court is powerless to act beyond its statutory grant of subject
matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should
itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt
about jurisdiction arises.").

(footnote omitted).[3]

Based on this rationale, the Court found that Deutsche Bank had shown by a preponderance of the evidence that the value, from Carstarphen's viewpoint, of the injunctive relief sought in the Complaint exceeded the $75,000 jurisdictional minimum for diversity jurisdiction under § 1332.  Accordingly, the April 17 Order concluded that diversity jurisdiction was present and denied plaintiff's Motion to Remand.

One week after entry of the April 17 Order, plaintiff filed a Motion to Reconsider (doc. 35) that focused exclusively on the amount-in-controversy issue, proffering a 12-page brief and an affidavit of counsel devoted to the proposition that the jurisdictional amount is not present.[4]  After briefing on this latest Motion, the Court now has the benefit of dozens of pages of briefing on a jurisdictional issue to which the parties initially devoted scant attention.  Armed with the parties' analyses of the § 1332 question, the Court revisits the issue of whether federal subject matter jurisdiction properly lies here.[5]

---

[3]    The April 17 Order expounded on this reasoning to distinguish this case from the typical foreclosure situation, wherein the value of enjoining a foreclosure from the plaintiff's perspective would be limited to the equity he or she has in the home, because that is all the plaintiff stands to lose in the event of foreclosure.  As the April 17 Order explained, "[t]he case at bar is different, however, because Carstarphen is claiming that she will or may remain obligated to pay the balance of the mortgage even if the foreclosure sale moves forward. ... Here, then, the value of an injunction from Carstarphen's standpoint is the full value of the home, with no offset for the remaining principal balance of the mortgage, because plaintiff asserts that she will or may continue owing that money notwithstanding any forfeiture."  *Id.* at *6 n.12.

[4]    The Motion to Reconsider was wholly silent as to the counterclaim, *in rem*, and voluntary-submission-to-jurisdiction theories that had dominated plaintiff's original Motion to Remand, the briefing on that Motion to Remand, and the April 17 Order, even though all such issues had been decided adversely to plaintiff.

[5]    Although neither side acknowledges it, the standard for reconsideration of a court order is demanding.  Indeed, "[i]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Gougler v. Sirius Products, Inc.*, 370 F. Supp.2d 1185, 1189 (S.D. Ala. 2005); *see also United States v. Bailey*, 288 F. Supp.2d 1261, 1267 (M.D. Fla. 2003); *Spellman v. Haley*, 2004 WL 866837, *2 (M.D. Ala. Feb. 22, 2002) ("litigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling").  A motion to reconsider is not a vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, --- U.S. ----, 128 S.Ct. 2605, 2617 n.5, 171 L.Ed.2d

**II.     Analysis.**

   *A.     Preliminary Matters.*

Unfortunately, the parties' briefs on the Motion to Reconsider become mired in tangential skirmishes that have little bearing on the narrow jurisdictional issue presented. These distractions may be disposed of quickly. For example, plaintiff's counsel insists that *Mapp v. Deutsche Bank Nat'l Trust Co.*, 2009 WL 435069 (M.D. Ala. Feb. 18, 2009), was wrongly decided and indicates that he is seeking reconsideration of same. (Doc. 35, at 2-3; doc. 38, at 6-9.) But this Court did not rely on *Mapp* for the amount-in-controversy ruling challenged by the Motion to Reconsider; rather, the April 17 Order relied on *Mapp* solely in analyzing other grounds for remand that are not addressed by the Motion to Reconsider. Even if plaintiff is correct that the jurisdictional portion of *Mapp* was wrongly decided, then, that fact would not be symptomatic of error in the April 17 Order, which expressly parted company with *Mapp* on the jurisdictional issue.[6]

---

570 (2008) (citation omitted); *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of motion to reconsider to afford a litigant "two bites at the apple"). The Eleventh Circuit has also stated that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997); *see also Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F. Supp.2d 1228, 1234 (M.D. Ala. 2004) (denying motion to reconsider where movant advanced new arguments). Furthermore, the Eleventh Circuit has reaffirmed that "[t]he only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact. A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (internal citations and quotations omitted). Ordinarily, this Court would summarily deny a Motion for Reconsideration such as Carstarphen's, inasmuch as it propounds arguments that could and should have been articulated, but were not, prior to entry of the order from which reconsideration is sought. To grant a second chance to a losing party who has thought of new, previously available arguments after her first salvo proved unpersuasive is to impose a considerable burden on scarce judicial and litigant resources. Notwithstanding the foregoing, the Court will proceed to the merits of Carstarphen's Motion because she raises non-waivable jurisdictional objections.

   [6]     In that same vein, plaintiff's dire prediction that the "practical result of the collective holdings in this case and *Mapp*" (doc. 35, at 7) would be the drastic expansion of federal jurisdiction over consumer protection litigation is unfounded. The April 17 Order was tightly focused on the particular, case-specific, and highly unusual allegations of Carstarphen's

Similarly, Deutsche Bank's brief on the Motion to Reconsider balks that Carstarphen has been living in her house for a prolonged period of time without making mortgage payments to anyone, and accuses her of engaging in delay tactics in this litigation to avoid making such payments.  (Doc. 37, at 2.)  Whether that statement is true or not has no bearing on the existence or absence of federal subject matter jurisdiction, and is therefore superfluous to the analysis.[7]

Next, in briefing the Motion, plaintiff's counsel accuses defendants' counsel of making unwarranted, scurrilous, unprofessional and personal attacks against him; takes pains to defend his honor and reputation from such perceived slings and arrows; professes to be "personally offended" by defendants' brief; and invites the Court to strike defendants' filing or take other action.  (Doc. 38, at 2-4, 10, 14, 16-17.)  After careful review of the allegedly offending brief, however, the Court finds nothing in defendants' advocacy that falls outside the range of acceptable professional conduct for counsel appearing in the Southern District of Alabama; therefore, plaintiff's request that it be stricken or that other sanctions be imposed against defendants' counsel is **denied**.[8]

_____

Complaint.  Specifically, the valuation analysis in the April 17 Order turned in large part on the Complaint's allegations that if defendants foreclosed on her home, plaintiff would still owe the full outstanding balance of her mortgage loan to some third party because of defendants' alleged lack of standing to effect foreclosure.  Thus, plaintiff's attempt to ascribe cataclysmic global jurisdictional impacts to the April 17 Order, should it remain undisturbed, is inaccurate and disregards the highly case-specific nature of the ruling.

[7]    Defendants' position is also difficult to follow from a logical standpoint.  The court file does not reveal that Deutsche Bank has joined any claims for affirmative relief in this action against Carstarphen.  There are no counterclaims, and Carstarphen is the only party seeking monetary or injunctive relief herein.  Thus, defendants apparently posit that Carstarphen is engaging in a campaign of foot-dragging in the prosecution of this litigation, the effect of which would be to delay adjudication of her own claims and, if she succeeds, postpone her recovery of money damages.  It is unclear why a plaintiff would sabotage her own claims for relief in the manner suggested by defendants, or why defendants would be unfairly prejudiced by such conduct.

[8]    Shrill accusations of impropriety by opposing counsel are rarely constructive; rather, they often serve to obfuscate the issues, muddy the waters, and shift the focus away from the task at hand.  Such is the case here.  Moreover, it is incongruous that plaintiff's counsel would profess such indignation at the relatively innocuous statements in defendants' brief when plaintiff's Reply (doc. 38) is heavily larded with gratuitous barbs at defendants' attorneys.  A

Finally, the Court is now aware of multiple cases brought by plaintiff's counsel involving similar jurisdictional issues that are being (or have recently been) litigated in federal courts throughout the state.  Plaintiff's counsel laments the varying outcomes of these cases based on what he characterizes as a "lack of comity between the Federal District Courts involved" (doc. 38, at 8), and pleads for intercession by appellate courts.  The Court disagrees.  It is not a "lack of comity" for a district court to decide one case differently than other judges have decided other cases, particularly where (1) the ruling is heavily fact- and case-specific, such that it may be distinguishable from other cases; and (2) the party objecting to a "lack of comity" never apprised the court of the existence or outcome of those other cases until after entry of an adverse ruling in the case at bar.  The Court therefore rejects plaintiff's counsel's unfounded suggestion that the April 17 Order is the product of a "lack of comity" among federal judges in Alabama.

### B.      Amount in Controversy.

After sifting through the rhetoric on both sides, the Court finds that the Motion to Reconsider hinges on a single narrow issue, to-wit:  The value, from plaintiff's perspective, of the injunctive relief requested in the Complaint.  As stated *supra*, the April 17 Order read the Complaint as seeking an injunction of the Deutsche Bank foreclosure sale and alleging that plaintiff's mortgage obligations to a third party would remain in place irrespective of whether that foreclosure sale occurred.  Thus, based on a case-specific analysis of Carstarphen's allegations in her pleadings (and in marked contrast with the run-of-the-mill case in which the

_____

sampling (but by no means an exhaustive cataloguing) of these is as follows:  plaintiff's counsel maintains that his counterparts are "unprofessional," that they failed to "truly analyze[] the cases," that they "take two completely different positions in the same case with respect to the same issue," that they have "ignored" this Court's rulings, that they "believe[] that Your Honor's Orders in this case are merely suggestions and not binding upon [Deutsche Bank] as a giant monolithic multinational empire unto itself," that perhaps Deutsche Bank "believes it has acquired the rights of a sovereign state that are not subject to the Orders of a mere Federal Court," that "Counsel wonders aloud if Deutsche Bank believes it must only follow those orders that it deems worthy of deference," and that defense counsel's argument "is an affront to everything that a legal professional should strive to see" and displays "the height of arrogance." (Doc. 38, at 2, 8, 10, 12, 13.)  Plaintiff's briefs are far more inflammatory than defendants'.  In that regard, plaintiff's counsel is cautioned that such histrionics, flippant tone, contemptuous references to opposing counsel, and gross hyperbole have no place in filings in this District Court.

value of such injunctive relief would be confined to the plaintiff's equity interest in the property foreclosed upon), the April 17 Order concluded that the value of the injunctive relief to Carstarphen was the value of the property itself, which defendants had shown by a preponderance of the evidence to exceed $75,000.

Plaintiff disputes the April 17 Order's premise concerning the nature and scope of injunctive relief sought in the Complaint.  To that end, she submits as an exhibit the Affidavit of Nick Wooten, her attorney of record, averring that he prepared the Complaint and offering various representations as to his intent in drafting the injunctive relief provisions set forth therein.  (Doc. 35, Exh. 1.)[9]  This affidavit is tantamount to a *post hoc* clarifying amendment of the pleadings, elaborating on and refining the plaintiff's specific claims for relief.  Such a *de facto* amendment by affidavit is improper and cannot be weighed in assessing subject matter jurisdiction in a removed case, which assessment depends on the pleadings at the time of removal.  *See, e.g., Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295 (11th Cir. 2008) ("The existence of federal jurisdiction is tested at the time of removal."); *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 n.2 (11th Cir. 2007) (in removal cases, "the district court must look at the case at the time of removal to determine whether it has subject-matter jurisdiction").[10]  Simply stated, Carstarphen must live with the Complaint as filed for purposes of evaluating whether the amount-in-controversy threshold was satisfied at the time of removal.  It is the plain language of the Complaint, and not counsel's after-the-fact representations of his then-unspoken intent in drafting it, that governs the inquiry into removal jurisdiction.  Therefore, the Wooten Affidavit will not be considered in evaluating the Motion to Reconsider.

---

[9]      For instance, the Wooten Affidavit purports to explain "the goal and object of the injunction" requested in the Complaint, and "[t]he goal and object of the declaratory relief sought in the complaint."  (Wooten Aff., ¶¶ 5-6.)

[10]      *See generally Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6, 127 S.Ct. 1397 (2007) (explaining that post-removal amendment to complaint does not defeat federal jurisdiction because "removal cases raise forum-manipulation concerns" that do not exist in other kinds of cases); *Poore v. American-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1291 (11th Cir. 2000) (opining that "events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction").

The key point on valuation raised in plaintiff's Motion to Reconsider (which was omitted
in briefing the Motion to Remand) is that the injunctive relief sought in the Complaint is
temporary, not permanent, in nature.  Count Five, the lone cause of action in which the
Complaint invokes injunctive relief, is captioned "Petition for an *Ex Parte* Temporary
Restraining Order."  In the body of Count Five, the only relief requested by Carstarphen is
issuance of "a Temporary Restraining Order enjoining the foreclosure sale from being conducted
on July 21, 2008 until such time as the bona fides of the plaintiff's complaint can be heard before
the Court after the taking of evidence."  (Complaint, ¶ 53.)  On its face, Count Five does not
request entry of a permanent injunction, nor indeed does it even seek a preliminary injunction;
rather, the only injunctive relief sought by Carstarphen is a TRO which, under Rule 65(b) of the
Alabama Rules of Civil Procedure, would "expire by its terms within such time after entry not to
exceed ten (10) days ... unless within the time so fixed the order for good cause shown is
extended or unless the party against whom the order is directed consents that it may be extended
for a longer period."  Rule 65(b), Ala.R.Civ.P.  Furthermore, the injunctive relief portion of the
Complaint's prayer for relief is confined to a request "[t]hat the Defendant be enjoined from
continuing its foreclosure sale until such time as the material averments of the Plaintiff's
complaint have been heard."  (Complaint, at 7.)

The temporal scope of the injunctive relief sought is crucial to an assessment of its
valuation from Carstarphen's perspective for amount-in-controversy purposes.  Indeed, the April
17 Order's discussion of valuation was premised on the understanding that Carstarphen was
seeking a permanent injunction to bar Deutsche Bank from instituting foreclosure proceedings
against her for all time because of its alleged lack of standing to do so.[11]  As the Motion to

---

[11]     In that regard, recall that the April 17 Order compared a situation in which
plaintiff kept her home and remained obligated to pay the mortgage to a third party (in the event
that injunctive relief were granted), and a situation in which she lost her home to Deutsche Bank
and remained obligated to pay the mortgage to someone else (in the event injunctive relief were
denied).  Assuming the validity of that comparison, then, the value of the injunctive relief would
be the value of the home because the only effect of the injunction would be to allow Carstarphen
to keep her home by blocking Deutsche Bank's foreclosure efforts, without altering or
eliminating her mortgage payment responsibilities to a third party.  If, as the Motion to
Reconsider posits, the injunctive relief sought in the Complaint is not permanent, but merely
temporary, the alternatives cannot be framed so starkly.  In that event, the applicable comparison

Reconsider stresses, however, closer reading of the Complaint confirms that she is not requesting

any such permanent injunction, but is instead requesting only a short-lived delay of any

foreclosure proceedings.  What is the value to Carstarphen of a temporary restraining order

forestalling Deutsche Bank's foreclosure sale for an abbreviated period of time?  It is surely

much lower than the value of permanent injunction of that foreclosure sale.  In the former

circumstance, she could still lose her home to Deutsche Bank once the TRO expired, while

remaining obligated to pay her mortgage to a third party.  In the latter, however, she could never

lose her home to Deutsche Bank, although she would continue being obligated to pay her

mortgage to a third party.

So the April 17 Order was mistaken in the perception that Carstarphen requests a

permanent injunction, as is true in virtually every lawsuit wherein a plaintiff seeks a TRO.  It is

now clear that she does not.[12]  Because the benefit to a homeowner of a permanent injunction

blocking a foreclosure sale is far greater than that of an ephemeral TRO prohibiting the same

conduct for mere days or weeks, the jurisdictional impacts of this distinction are profound.  In

assessing the value to Carstarphen of postponing Deutsche Bank foreclosure activity during the

life of a TRO, no basis for fixing that valuation above the $75,000 threshold is either "stated

clearly on the face of the documents before the court, or readily deducible from them."  *Lowery*,

483 F.3d at 1211.  The Court could not place a valuation in excess of $75,000 on that temporary

injunctive relief without engaging in speculation, which is forbidden.  *See id.* at 1213 (district

---

would be between a situation in which Carstarphen loses her home today and remains obligated
to pay the mortgage (if injunctive relief is denied), and one in which she may still lose her home
to Deutsche Bank in a matter of days or weeks upon expiration of the TRO and remains
obligated to pay the mortgage to the third party (if injunctive relief is granted).

[12]     Typically, claims for entry of temporary restraining orders and those for entry of
preliminary and permanent injunction go together like hand in glove.  It is unclear why
Carstarphen took the unorthodox step of formulating her Complaint to request only a TRO, with
no follow-up, long-term injunctive relief of any kind.  But plaintiff is the master of her
Complaint, and this Court cannot rewrite the pleadings in its jurisdictional inquiry to correct any
perceived discrepancies or aberrations, much less to insert a jurisdictional foothold that is
otherwise lacking.  *See, e.g., Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008) ("The
plaintiff is the master of the complaint.  The plaintiff selects the claims that will be alleged in the
complaint.").

court must not "speculate in an attempt to make up for the notice's failings").  As such, on reconsideration, the Court concludes that the injunctive-relief component of the Complaint does not satisfy the amount-in-controversy threshold mandated by 28 U.S.C. § 1332.  Nor does combining the value of the injunctive relief with the uncertain monetary damages sought in the Complaint (*see* April 17 Order, at 12-13 n.13) render it clear or readily deducible that the amount in controversy here exceeds $75,000.

Tellingly, Deutsche Bank's brief on the Motion to Reconsider eschews any discussion of the temporary/permanent injunction distinction that marks the focal point of the Motion. Instead, Deutsche Bank makes a broader point that amount-in-controversy determinations depend on the value to a plaintiff if injunctive relief is granted, not the damages to a plaintiff if injunctive relief is denied.  (Doc. 38, at 37.)  This is a correct statement of law.  *See, e.g., Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 n.9 (11th Cir. 2000) ("the value of an injunction for amount in controversy purposes must be measured by what the plaintiff stands to gain").  But Deutsche Bank does not explain why that difference matters in this specific valuation analysis.  Defendants' only other substantive argument concerning the value of injunctive relief sought in the Complaint is that "the measure of what [plaintiff] gains from having her injunctive relief granted includes, within her bundle of sticks, her ownership interest in the property."  (Doc. 37, at 5.)  True enough, but this argument overlooks the narrowly circumscribed temporal dimension of that injunctive relief.  The Complaint does not request that an injunction be entered protecting Carstarphen's ownership of the property from Deutsche Bank incursions for all time; rather, it seeks protection of that interest merely for the duration of a TRO, the lifespan of which is curtailed by the Alabama Rules of Civil Procedure.  So again, the proper inquiry for valuation of the injunctive relief sought is the value to Carstarphen of being insulated from foreclosure by Deutsche Bank during a fleeting, transitory span.  Defendants make no arguments that might warrant equating the value of a brief postponement of foreclosure proceedings with the full $86,000 value of the home.[13]

_____

[13]     Two other points from Deutsche Bank's brief bear mention.  First, defendants cast their jurisdictional argument as being that "Plaintiff's Complaint alleges that she is in jeopardy of being subjected to two simultaneous obligations for the balance of the loan - one from the rightful mortgage holder and one from" Deutsche Bank.  (Doc. 37, at 4 n.2.)  Notwithstanding

**III.     Conclusion.**

For all of the foregoing reasons, plaintiff's Motion to Reconsider (doc. 35) is **granted**. Upon reconsideration, the Court finds that defendants have failed to establish the jurisdictional amount by a preponderance of the evidence.  With the $75,000 amount-in-controversy element being unsatisfied, Section 1332 does not confer federal subject matter jurisdiction over this action.  Accordingly, on reconsideration, Section II.D. of the Order (doc. 34) entered on April 17, 2009 is **vacated** to the extent that it is inconsistent with the above.  Because diversity jurisdiction is lacking, and in the absence of any other basis recited in the Notice of Removal (doc. 1) for invoking federal jurisdiction, this action is **remanded** to the Circuit Court of Clarke County, Alabama, for further proceedings, pursuant to 28 U.S.C. § 1447(c).

DONE and ORDERED this 1st day of June, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

plaintiff's derisive response, the Court agrees with defendants' characterization.  Indeed, the underpinnings of the April 17 Order were the Complaint's allegations that Deutsche Bank was trying to foreclose on her house even though someone else was the rightful mortgage holder, such that plaintiff's obligations to the "someone else" would survive even if Deutsche Bank completed foreclosure.  Nevertheless, given the short-lived injunctive relief sought, the Court cannot agree with defendants' conclusion that these two conflicting obligations mean that "Plaintiff sought the benefit of extinguishing one of the two obligations in an amount equal to the full balance of the loan."  (*Id.*)  As explained *supra*, by limiting the injunctive relief sought to a mere ephemeral TRO, the Complaint sought not to extinguish one obligation, but to forestall it for a short time.  The value to plaintiff of that postponement cannot reasonably be pegged to the entire balance of the loan.  Second, in the interlocutory appeal portion of their brief, defendants mention the bankruptcy jurisdiction argument that this Court previously struck as untimely.  Although this reference prompted plaintiff's counsel to object that defendants are ignoring court orders, defendants' brief is clear that they "are not attempting to place the merits of this issue before the court at this time."  (Doc. 37, at 6.)  There is nothing improper about defendants' argument.  Defendants have not asked this Court to take a fresh look at their bankruptcy basis for invoking federal jurisdiction, which was previously stricken as untimely raised, and this Court will not do so.